UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BAKER CONCRETE CONSTRUCTION
INC.,

       Plaintiff,

vs.

REINFORCED CONCRETE IRON
WORKERS LOCAL UNION 372 OF THE
INTERNATIONAL ASSOCIATION OF
BRIDGE STRUCTURAL, ORNAMENTAL,
AND REINFORCING IRON WORKERS, *et al.*,

       Defendants.

Case No. 1:13-cv-225

Magistrate Judge Bowman

**MEMORANDUM OPINION**

This action is now before the Court on the parties' cross motions for judgment (Docs. 25, 26) and their responsive memoranda. (Docs. 27, 28, 29, 30) Plaintiff seeks to vacate the arbitration award against it and to declare that they are not subject to any collective bargaining agreement. Defendant seeks to dismiss Plaintiff's complaint to vacate the arbitration award and counterclaims seeking enforcement of the award. The parties have consented to the exercise of jurisdiction by the Magistrate Judge pursuant to 28 U.S.C. § 636(c). (*See* Doc. 11). For the reasons set forth herein, the undersigned finds that Plaintiff is entitled to judgment as a matter of law.

    **I.**    **Background and Facts**

Plaintiff Baker Concrete Construction, Inc. ("Plaintiff" or "Baker") is a corporation organized, existing, and duly qualified to do business in Ohio and is an employer engaged in an industry affecting commerce as defined in Sections 2(2), 501(1), and

1

501(3) of the LMRA, 29 U.S.C. §§ 152(2), 142(1), and 142(3), and within the meaning of Section 301, 29 U.S.C. § 185.  (Doc. 1, ¶ 3; Doc. 5, ¶ 3).  Baker is a concrete construction company performing work on building projects throughout North America. (Doc. 25, Ex. 2, McNames Aff. ¶ 3).

Defendant Reinforced Concrete Iron Workers' Local Union 372 of the International Association of Bridge, Structural, Ornamental, and Reinforcing Iron Workers ("Local 372" or "the Union") is a labor organization representing employees in an industry affecting commerce, as defined in Sections 2(5), 501(1), and 501(3) of the LMRA, 29 U.S.C. §§ 152(5), 142(1), and 142(3), and within the meaning of Section 301, 29 U.S.C. § 185. (Doc. 1, ¶ 4; Doc. 5, ¶ 4).  Local 372 represents workers performing reinforcing iron work for concrete construction. (Doc. 1, ¶ 4; Doc. 5, ¶ 4).

Local 372 and the Reinforced Concrete Contractors Association ("RCCA") are parties to a multi-employer collective bargaining agreement ("CBA"), which RCCA negotiated on behalf of the individual employers who agreed to be bound by it.[1] RCCA is a multi-employer association that represents contractors for purposes of bargaining with Local 372. (Doc. 1, ¶ 5; Doc. 5, ¶ 5).  The current CBA between Local 372 and RCCA took effect on June 1, 2012 and expires on May 31, 2015 (the "2012 CBA").

On June 6, 2000, Baker became a signatory to a multi-employer collective bargaining agreement between Local 372 and RCCA. (Doc. 25, Stiles Dep. Tr. pp. 47-48; Stiles Dep. Ex. J; McNames Aff. ¶ 5; McNames Aff. Ex. A). The 2000 CBA covered

---

[1] RCCA was also named as a Defendant in this matter.  However, Plaintiff's claims against RCCA were dismissed on October 4, 2013.  (Doc. 21).

2

Baker Concrete co-workers[2] who installed reinforcing iron work on Baker Concrete's construction projects in the covered geographic territory.

According to Plaintiff, April 2003 was the last date Baker Concrete employed any co-worker covered by the Local 372 CBA. (Doc. 25, Stiles Dep. Tr. pp. 35-39; Stiles Dep. Exs. F, G; Cole Aff. ¶ 6, 7, 10, 11, 12; Cole Aff. Exs. A, B).  Local 372 contends, however, that Baker has employed workers covered by the Local 372 CBA through its alter ego, Titan Reinforcing, LLC, after April 2003.

On January 25, 2013, Douglas McNames, Baker's vice president of contract administration, sent Local 372 a "Notice of Termination of Labor Contract." (Doc. 1, Ex. B).  The letter expressed Baker's position that it had "no ongoing contractual obligations under the Agreement," and it gave notice "that Baker has withdrawn any authority the RCCA has or may have had to act as an agent on Baker's behalf." *Id.* Rob Barker, a representative/organizer for Local 372 responded with a letter stating that Baker had not satisfied the proper contractual procedures for terminating its obligations under the Agreement. (Doc. 1, Ex. C).  McNames replied with another letter reiterating Baker's belief that it had properly terminated the contract. (Doc. 1, Ex. D).

In March 2013, James Stiles, Local 372's business representative for the Louisville area, learned that Baker Concrete hired a non-union subcontractor to provide reinforcing iron workers on a project in Louisville, Kentucky. (Doc. 25, Stiles Dep. Tr. pp. 50-52).

Thereafter, on March 6, 2013, Local 372 filed a grievance against Baker under the 2012 CBA.  (Doc. 1, ¶ 14; Doc. 5, ¶ 14; Doc. 25, Stiles Dep. Tr. pp. 50-52, 56; Stiles

---

[2] Baker Concrete uses the term "co-workers" to refer to its employees.

3

Dep. Ex. O; McNames Aff. ¶ 10). The grievance alleged Baker violated Article 23 of the 2012 CBA. (Stiles Dep. Ex. O; McNames Aff. ¶ 11). Article 23 prohibits covered employers from hiring subcontractors with employees not represented by the union or that do not pay union-level wages and fringe benefits.

After Baker learned about this grievance, it wrote Tina Lainhart, the executive director of the RCCA, explaining its position that Baker was not covered by the Agreement. (Doc. 1, Ex. E). It also attached correspondence between itself and the Union, which it claimed showed its lack of obligation. *Id*; See also Doc. 1, Exs. B, C, D. Baker agreed to appear at the arbitration hearing "to preserve and explain its position that it is not subject to the Agreement" and said it did "not consent to the Joint Committee's jurisdiction to decide the grievance's arbitrability or its merits." Doc. 1, Ex. E.

On March 26, 2013, RCCA convened an arbitration hearing on the grievance. (Doc. 1, ¶ 17; Doc. 5, ¶ 17; Doc. 25, Stiles Dep. Tr. pp. 58-61; McNames Aff. ¶ 12). Pursuant to Article 35 of the CBA, a Committee of four representatives heard the grievance: two Local 372 representatives and two representatives from other signatory employers ("Grievance Committee"). (Doc. 1, ¶ 15, Doc. 1¶ 15; Doc. 25, Stiles Dep. Tr. pp. 58-61; McNames Aff. ¶ 13). Local 372 argued that Baker Concrete was bound to the CBA and that Baker Concrete impermissibly hired a non-union subcontractor in violation of Article 23. (Stiles Dep. Tr. pp. 62, 64).

The Grievance Committee issued an award against Baker (Doc. 1, ¶ 19; Doc. 5, ¶ 19; Doc. 25, McNames Aff. ¶ 15; McNames Aff. Ex. B). The Grievance Committee ruled Baker Concrete was a signatory to the Local 372 CBA and that Baker Concrete

4

violated the 2012 CBA when it subcontracted work to a non-union employer. The award required Baker Concrete to replace the non-union subcontractor with a union subcontractor, make restitution to Local 372's fringe and assessment funds based on the number of hours worked on the project, and pay any employees on the project the full union wage due to a Local 372 member under the 2012 CBA. The decision required Baker Concrete to do all of this by April 2, 2013. (Doc. 1, Ex. F; Doc. 25, McNames Aff. ¶ 15; McNames Aff. Ex. B).

Baker Concrete filed the instant action on April 2, 2013 seeking both a declaratory judgment that it is not bound to any CBA with Local 372 and relief from the Grievance Committee's award. Local 372 filed a counterclaim against Baker Concrete seeking to enforce the arbitration award and seeking an injunction compelling Baker Concrete's compliance with both the Grievance Committee award and the 2012 CBA. This matter is now before the Court on the parties' cross motions for judgment. (Docs. 25, 26 ).

## II. Analysis

### A. The Parties' Cross Motions for Judgment

Baker moves for summary judgment to vacate the arbitration award and declare it not subject to the CBA. (Doc. 25). Baker asserts that the "one-employee unit rule" eliminates any contractual obligation it may have under a collective bargaining agreement. Because they are not bound by the agreement, Baker Concrete asserts that it had the option to repudiate the agreement at any time, regardless of the agreement requirements. Regarding the arbitration award, Baker Concrete argues that the award should be vacated because they were not subject to the arbitrator's

5

jurisdiction and that the only reason Baker Concrete attended the arbitration was to communicate this point and not to consent. (Doc. 25 at 10-11).

The Union also moves for summary judgment dismissing Plaintiff's complaint as well as summary judgment seeking enforcement of the arbitration award. It argues that the issue of Baker's status under the agreement was committed to arbitration by both parties. (Doc. 26). The Union argues further that even if the one employee unit rule allows for termination of an agreement, it is not automatic and Baker Concrete never repudiated the agreement.

Upon careful review, the undersigned finds that Baker has established that it had no contractual allegations under the CBA. As such, their motion for summary judgment is well taken.

### B. Standard of Review

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "The 'mere possibility' of a factual dispute is not enough."  *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986).  The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor."  *Id.* at 255 (emphasis added).  The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided.  *Id.* at 251-52.

 To demonstrate a genuine issue of fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita,* 475 U.S. at 587 (citation omitted).

**C.  At the time of the arbitration, Baker was not contractually bound by the 2012 CBA.**

Baker contends that it is not subject to the 2012 CBA because it has not employed any co-workers covered by any CBA with Local 372 for over ten years.  As a result, Baker Concrete asserts it: (1) could repudiate the 2012 CBA, including its restrictions on using non-union subcontractors; (2) was not subject to the Grievance

Committee's jurisdiction or the award it issued; and (3) has no duty to bargain with or have any ongoing contractual obligations to Local 372. The undersigned agrees.

1. *"One Employee Unit Rule"*

Employers that do not employ anyone in a bargaining unit may lawfully "withdraw recognition from a union; repudiate their contract with the union, or unilaterally change employees' terms and conditions of employment without affording the union an opportunity to bargain." *Stack Electric*, 290 NLRB 575, 577 (1988). Under this "one-employee unit rule, "the NLRB consistently holds that, as a matter of law, employers with one or fewer employees in a bargaining unit have no contractual obligations despite the existence of a collective bargaining agreement. *See Haas Garage Door Co.*, 308 NLRB 1186 (1992); *Searls Refrigeration Co.*, 297 NLRB 133 (1989). A common-sense rationale for this rule exists—with one or fewer employees in a unit, no "collective" exists for the employer to bargain with in the first place. *Foreign Car Center, Inc.*, 129 NLRB 319, 320 (1960).

The "one-employee unit" rule trumps any language that purports to indefinitely bind a signatory employer until that employer terminates under the agreement's terms. *See Whiting-Turner Contracting Co. v. Local Union 7, 15 F. Supp. 2d at 162, 164 (D. Mass. 1998)* (holding that, in spite of successor language, an employer may repudiate a collective bargaining agreement "at any time that it has no more than one employee in the appropriate bargaining unit"). Because the employer is not bound to the agreement, it is not required to follow the agreement's termination timing requirements. *Id*. The rule also relives the employer of its duty to bargain and any future obligations under a collective bargaining agreement that covers the unit with one or fewer employees. *See*

8

*J.W. Peters, Inc. v. Bridge, Structural & Reinforcing Iron Workers, Local Union 1,* 398 F.3d 967, 974 (7th Cir. 2005) (noting caselaw excusing an employer's duty to bargain in addition to any ongoing obligations under collective bargaining agreements).

When an employer has no intention to employ anyone in the bargaining unit, the one employee unit rule permits employers to repudiate a collective bargaining agreement after only a few months of maintaining a one- or zero-employee unit. *Stanker & Galetto, Inc. v. New Jersey Reg'l Council of Carpenters of United Bhd. of Carpenters & Joiners of Am.*, CIV. 12-5447 RBK/KMW, 2013 WL 4596947 (D.N.J. Aug. 28, 2013). *See also Whiting-Turner,* 15 F. Supp. 2d at 162 (one-employee unit rule allowed repudiation when employer had not employed anyone in the unit "for at least 10 years"); *Laborers Health & Welfare Trust Fund v. Westlake Development*, 53 F.3d 979, 98 (9th Cir.1995) (repudiation permitted when no employees in unit for three years); *J.W. Peters*, 398 F.3d at 970 (repudiation permitted when no employees in unit for one year).

Thus, it is settled that if an employer employs one or fewer unit employees on a permanent basis that the employer, without violating Section 8(a)(5) of the Act, may withdraw recognition from a union, repudiate its contract with the union, or unilaterally change employees' terms and conditions of employment without affording the union an opportunity to bargain. *SAC Construction Co.*, 235 NLRB 1211, 1230 (1978); *Sunray Limited*, 258 NLRB 517, 518 (1981); *Chemetrons Corp.*, 268 NLRB 335 (1983). The basis for permitting an employer to engage in this conduct was explained by the Board in *Foreign Car Center*, 129 NLRB 319, 320 (1960), as follows:

9

> The Board has held that it will not certify a one-man unit because the principles of collective bargaining presuppose that there is more than one eligible person who desires to bargain. The Act therefore does not empower the Board to certify a one-man unit. By parity of reasoning, the Act precludes the Board from directing an employer to bargain with respect to such a unit. While we have held that the Act does not preclude bargaining with a union on behalf of a single employee, if an employer is willing, we have never held that an employer's refusal to bargain with a representative on behalf of a one-man unit is a refusal to bargain within the meaning of Section 8(a)(5).

*Id.*

Here, as detailed above, in June 2000, Baker became signatory to a multi-employer collective bargaining agreement between Local 372 and the Reinforced Concrete Contractors Association ("RCCA"). (Doc. 25, Stiles Dep. Tr. pp. 47-48 (Attachment 4); Stiles Dep. Ex. J (Attachment 5); Doc. 25, McNames Aff. ¶ 5; McNames Aff. Ex. A). The 2000 CBA covered Baker Concrete co-workers that installed reinforcing iron work on Baker Concrete's construction projects in the covered geographic territory. The 2000 CBA also contained automatic renewal language binding signatory employers to successor agreements. (Doc. 25; Stiles Dep. Tr. p. 48). Employers could terminate their obligations under a successor CBA by notifying the union in writing within time periods specified in the CBA.

In early 2003, Baker stopped hiring co-workers to install reinforcing iron work and no longer employed any reinforcing iron workers. (Doc. 25, McNames Aff. ¶ 6). As such, April 2003 was the last date Baker Concrete employed any co-worker covered by the Local 372 CBA. (Doc. 25, Stiles Dep. Tr. pp. 35-39; Stiles Dep. Exs. F, G; Cole Aff. ¶ 6, 7, 10, 11, 12. Thus, under the one employee one unit rule, after April 2003, Baker

contends that it could properly terminate their obligations under a successor CBA by notifying the union in writing within time periods specified in the CBA.

The Union however, asserts that Baker cannot properly assert the "one employee one unit rule" because it employed workers covered by the CBA through its alter ego, Titan Reinforcing, LLC. "The alter ego doctrine is most commonly used in labor cases to bind a new employer that continues the operations of an old employer in those cases where the new employer is 'merely a disguised continuance of the old employer.' " *NLRB v. Fullerton Transfer & Storage Ltd., Inc.,* 910 F.2d 331, 336 (6th Cir.1990) (quoting *Southport Petroleum Co. v. NLRB,* 315 U.S. 100 (1942)). In this context, the alter ego theory "prevent[s] employers from evading obligations under the Act merely by changing or altering their corporate form." *NLRB v. Allcoast Transfer, Inc.,* 780 F.2d 576, 579 (6th Cir.1986); *see also NLRB v. C.J.R. Transfer, Inc.,* 952 F.2d 403, 1992 WL 3708, (6th Cir. Jan.10, 1992) (unpublished) (applying the alter ego doctrine where a company stopped making required contributions to a benefit trust fund after discharging all of its union employees, but the employees were promptly rehired to work in a nonunion company under the same ownership).

To determine if an alter ego relationship exists, the Court must determine "whether the two enterprises have substantially identical management, business purposes, operations, equipment, customers, supervision and ownershi' to decide whether one is the alter ego of the other." *NLRB v. Fullerton Transfer & Storage*, LTD., F.2d 331, 336 (6th Cir. 1990).  This analysis also requires a petitioner to show "pervasive intermingling of funds and operations ... to support a finding that two companies are alter egos of one another." *Trustees of the Resilient Floor Decorators*

11

*Ins. Fund v. A & M Installations, Inc.,* 395 F.3d 244, 249 (6th Cir.2005). *N.L.R.B. v. Ctr. Const. Co.*, 11-MC-51480, 2014 WL 988998 (E.D. Mich. Feb. 21, 2014). "The analysis is flexible and 'no one element should become a prerequisite to imposition of alter-ego status; rather, all the relevant factors must be considered together.'" *Id.*, quoting *Allcoast Transfer, Inc.,* 780 F.2d at 582. *N.L.R.B. v. Ctr. Const. Co.*, 11-MC-51480, 2014 WL 988998 (E.D. Mich. Feb. 21, 2014).

Here, the Union contends that Baker and Titan both perform work under the Local 372 CBA, and they have the same principal office. The sole organizer of Titan, Daniel L. Baker, was also a founding director of Baker, where he is currently the CEO. Both Daniel L. Baker and Cynthia S. Baker are currently officers of both Baker and Titan. Additionally, Cynthia S. Baker was a founding director of Baker. (Doc. 25, Stiles Dep. at 17–20, 28–32, Exs. C and D). Such evidence, however fails to show a substantial overlap between the two companies.

Notably, the Union has provided no evidence of intermingled operations or supervisors, intermingled funds, interchange of employees, or common equipment. Overall, Local 372 fails to show any facts supporting substantial overlap between the two completely separate legal entities. See *Dorn Sprinkler*, 669 F.3d at 794 (finding no alter-ego relationship where the two companies' management was not substantially identical and other factors generally indicated a lack of alter-ego status); *Fullerton Transfer*, 910 F.2d at 338 n.11 (no alter-ego relationship where the two entities shared an office location but business assets were not "intermingled"); *NLRB v. Ctr. Constr. Co.*, No. 11-mc-51480, 2014 U.S. Dist. LEXIS 36491, at *18-19 (E.D. Mich. Feb. 21,

12

2014) (no alter ego relationship where "starting" a business does not necessarily equate to ownership and management of the business).

Accordingly, the undersigned finds that the Union fails to establish that Titan was an alter ego of Baker. Furthermore, even assuming Titan was an alter ego of Baker, the Union has provided no evidence that Titan, in fact, employed bargaining unit employees during the relevant period.

2. *Effect of one employee unit rule*

Next, even assuming that Baker may properly invoke the one employee unit rule, the Union contends that the rule does not automatically invalidate the relevant CBA. In this regard, the Union asserts that there is a critical distinction between an employer's duty to bargain under Section 8(a)(5) of the National Labor Relations Act and the employer's contractual obligations. Notably, the Union contends that "an employer is free to withdraw recognition from a union representing a bargaining unit that consists of a single employee … [h]owever, although the employer will be relieved of its *statutory bargaining obligation*, its obligations under any collective bargaining agreement covering the remaining employee *may* continue." (*See* Doc. 28, p. 6, quoting N. Peter Lareau, *Labor & Employment Law* § 12.04(6)(Matthew Bender 2006)(emphasis added). See also *Stack Electric*, 290 NLRB 575, 577 (1988) (one employee unit rule allows a company to repudiate a CBA *without committing an unfair labor practice*) (emphasis added).

The Union further asserts that the Sixth Circuit Court of Appeals has ruled that collective bargaining agreements could be enforceable even when the bargaining unit contains no employees. *See Teamsters Local union No. 89 v. Kroger Co.,* 617 F.3d

13

899, 906-07 (6th Cir. 2010). *See also Payne v. Local Lodge 698*, 856 F. Supp. 2d 915, 923 (E.D. Mich. 2012) ("a collective bargaining agreement is not void simply because it covers only one employee. The agreement remains enforceable unless and until actually repudiated by the employer.").

As noted by Baker, however, when applying the one employee unit rule under facts nearly identical to those here, federal courts have rejected Local 372's argument that contractual obligations continue even after the duty to bargain extinguishes. *See J.W. Peters, Inc. v. Bridge, Structural & Reinforcing Iron Workers, Local Union 1*, 398 F.3d 967, 974 (7th Cir. 2005); *Laborers Health & Welfare Trust Fund v. Westlake Dev. Co.*, 53 F.3d 979, 984 (9th Cir. 1995).

Notably, in *J.W. Peters*, the employer signed an 8(f) collective bargaining agreement while employees worked in the covered bargaining unit. *J.W. Peters*, 398 F.3d at 969. Over a year passed without any employees in the unit. As such, the employer notified the union of that fact, and also noted that it considered itself no longer bound to the collective bargaining agreement. *Id.* at 970. The union disagreed, arguing the employer was still bound to the collective bargaining agreement and alleging the termination did not comply with the collective bargaining agreement's timing requirements. The union then filed a grievance and demanded arbitration to determine whether the employer's termination was effective. *Id.* Relying on the one-employee unit rule, the employer sued in federal district court, seeking a declaratory judgment that it was no longer bound to the collective bargaining agreement. *Id.* at 971. Reversing the district court, the Seventh Circuit rejected Local 372's proffered argument, finding the NLRB's decisions "explicitly allow an employer, more generally,

14

to repudiate a pre-hire [8(f)] agreement and discontinue its duties under the agreement where it employs no more than one employee in the relevant unit." *Id.* (citing *Sunray Ltd.*, 258 NLRB 517, 518 (1981) and *SAC Constr. Co.*, 235 NLRB 1211, 1220 (1978)). The Seventh Circuit noted the Ninth Circuit reached the same conclusion on similar facts, when that court concluded that the employer's repudiation rendered the collective bargaining agreement "void, not merely voidable." *Id.* at 975 (citing *Westlake*, 53 F3d. at 984).

The undersigned recognizes that this court is not precedential bound by decisions outside this Circuit. However, as the Sixth Circuit is apparently silent on this issue, the undersigned finds the reasoning and analysis in these cases from our sister Circuits to be sound and persuasive on the issues currently before this Court. As such, the undersigned agrees that the one employee one unit rule, when properly invoked by the employer, voids the relevant collective bargaining agreement.

The Union further contends that Baker's collectively bargained agreement with the Union waives the one-employee unit rule. Article 23 of the Agreement expressly requires signatories such as Baker to either a) pay union wages to its *own employees*, or b) guarantee the payment of union-level wages to employees of any sub-contractor whose employees, i.e., *a third party's employees*, perform any work that is covered in the Agreement. Thus, the Union argues that Baker agreed to guarantee union level wages were paid to its sub-contractors' employees, even if Baker had no employees performing installation of reinforced concrete. Baker, however, contends that the premise of the one-employee unit rule is the employer is *not bound* to the collective bargaining agreement when it has one or fewer employees in the unit. Thus, Baker

15

argues that because it is not bound to the CBA, the CBA's language is irrelevant.[3] The undersigned agrees.

As noted above, the premise of the one employee unit rule is that the employer is no longer contractually bound by the collective bargaining agreement. *See Haas Garage Door Co.*, 308 NLRB 1186 (1992); *Searls Refrigeration Co.*, 297 NLRB 133 (1989) (as a matter of law, employers with one or fewer employees in a bargaining unit have no contractual obligations despite the existence of a collective bargaining agreement).

Based on the foregoing, the undersigned concludes that the undisputed facts establish that Baker has not employed any individual performing work covered by a CBA with Local 372 since April 2003. (Doc. 25, Cole Aff. ¶ 6, 7, 10, 11, 12; Cole Aff. Exs. A, B). As a result, Baker could properly repudiate the CBA under the one employee unit rule. The Court must now determine whether Baker gave proper notice of its decision to terminate the agreement.

*3. Termination of the CBA*

A construction industry employer under the one employee unit rule can end the agreement by putting the union on notice that agreement has been terminated. See *Operating Engineers Pension Trust v. Beck Eng'g & Surveying Co.*, 746 F.2d 557 (9th Cir. 1984). Here, by letter, dated January 25, 2013, Baker Concrete notified Local 372 that Baker Concrete had no obligations under any collective bargaining agreement with Local 372 because Baker Concrete employed no employees performing bargaining unit work. (Doc. 1, Ex. B). The Union replied with a letter stating that Baker Concrete had

---

[3] Baker also notes that the Union cites no binding or precedential authority for this contention.

not satisfied the proper contractual procedures for terminating its obligations under the agreement. Namely, that notice of withdrawal should be made not more than 60 days prior to the termination of the Agreement. The Agreement is in effect from January 1, 2003 to May 31, 20015. As such, the Union contends that Plaintiff's termination was untimely. The Union further claims that Baker Concrete had not terminated the agreement because the language did not clearly specify that the agreement was terminated. The Union's assertions are not well-taken.

As noted by Baker, repudiation under the one employee unit rule effective "by conduct sufficient to put the union and the employee [in the single-employee bargaining unit] on notice that the agreement has been terminated." *Operating Eng'rs Pension Trust v. Beck Eng'g & Surveying Co.*, 746 F.2d 557, 566 (9th Cir. 1984); *see also Elec. Workers Local 58 Pension Trust Fund v. Gary's Elec. Serv. Co.*, 227 F.3d 646, 657 (6th Cir. 2000) (stating repudiation of an 8(f) agreement "by conduct" requires notice to the parties that the agreement is void and a breach of the contract). Here, the undisputed facts clearly establish that Baker gave notice, in writing, to the Union that it was terminating the agreement. Notably, the subject line of Baker's January 25, 2013 letter the Union stated "Notice of Termination of Labor Contract." (Doc. 1, Ex. B).

### D. Arbitration Award

Last, because Baker was not bound by the CBA at the time of the arbitration, Baker asks the Court to vacate the arbitration award of the Grievance Committed issued on March 28, 2013 finding that Baker was bound by the 2012 CBA and that Baker violated its subcontracting provision (Article 23). Local 372, however, seeks enforcement of the arbitration award asserting that Baker consented to the arbitration

17

and should therefore be bound by the outcome. *See Mich. Family Resources, Inc. v. SEIU Local 517M,* 475 F.3d 746 (6th Cir. 2007).

An arbitration award is properly vacated when the arbitrator lacks jurisdiction over the dispute or the parties. *See, e.g.*, *Laborers Health & Welfare Trust Fund v. Westlake Dev.*, 53 F.3d 979, 984 (9th Cir. 1995) (vacating arbitration award as invalid under the one employee unit rule); *Peterbilt Motors Co. v. UAW Int'l Union*, 219 Fed. Appx. 434 (6th Cir. 2007) (vacating arbitration award because the dispute was not arbitrable and involved a party not subject to the collective bargaining agreement). Here, as detailed above, the Court finds that Baker was not subject to the CBA as a matter of law. Thus, the Grievance Committee had no jurisdiction to issue an award against Baker. Accordingly, Plaintiff is entitled to judgment as a matter of law and the arbitration award is herein vacated.

### III. Conclusion

In light of the foregoing, it is **ORDERED** that Defendant Local 372's motion for summary judgment (Doc. 26) is **DENIED***,* Plaintiff's motion for summary judgment (Doc. 25) is **GRANTED**, and the arbitration award issued by the Grievance Committee on March 28, 2013 is herein **VACATED**. The Court further **DECLARES** that Baker Concrete has no duty to bargain with Local 372 and no ongoing contractual obligations under any Local 372 CBA. As no further matters remain pending, this case is herein **TERMINATED** on the active docket of the Court

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

18